THE O'MARA LAW FIRM, P.C.
WILLIAM M. O'MARA, ESQ.
Nevada Bar No. 00837
BRIAN O. O'MARA, ESQ.
Nevada Bar No. 08214
DAVID C. O'MARA, ESQ.
Nevada Bar No. 08599
311 East Liberty Street
Reno, Nevada 89501
Telephone: 775/323-1321
775/323-4082 (fax)

Attorneys for Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| GLENN D. HUTTON, derivatively on Behalf of Nominal Defendant Gaming Partners International Corp., | ) ) ) ) | Case No. |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| GERARD P. CHARLIER, ERIC P. ENDY, ALAIN THIEFFRY, ELISABETH CARRETTE, ROBERT J. KELLY, CHARLES R. HENRY, and DAVID W. GRIMES, | ) ) ) ) ) | VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT |
| Defendants, | ) ) | |
| and | ) ) | |
| GAMING PARTNERS INTERNATIONAL CORP., | ) ) ) | |
| Nominal Defendant. | ) ) ) | JURY TRIAL DEMANDED |

1.      This is a shareholder derivative action brought by Plaintiff and shareholders of Gaming Partners International Corp. ("GPIC" or the "Company") against certain current or former officers and directors of GPIC seeking to remedy the Individual Defendants' violations of state law, including breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment and negligence that occurred from May 15, 2006 through the present, (the "Relevant Period") and that have caused substantial losses to the Company.[1]

2.      GPIC is a company engaged in the manufacture and supply of casino table game equipment to casinos worldwide. In addition, the company sells its non-casino poker chips to a wholesaler in the United States, and it markets its products directly to end-users and through distributors.  Throughout the Class Period, defendants represented to investors that the Comp any maintained adequate internal controls and procedures, while at the same time, complying with Generally Accepted Accounting Principles ("GAAP") and SEC accounting rules.

3.      On March 28, 2007, defendants announced that the Company was delaying the filing of its full-year 2006 report due to deficiencies in accounting control procedures. GPIC said the deficiencies were discovered while its year-end financial statements were being prepared. In addition, the Company said that it expects to identify certain of these deficiencies as material weaknesses when the report is filed, and that it is working to resolve and remedy them.

4.      Defendants' representations concerning the Company's internal operational controls and financial procedures were either patently untrue, or were made with reckless disregard of the

---

[1] Because Defendants have failed to take action to remedy the breaches of fiduciary duties that occurred between May 15, 2006 and March 28, 2007, the Relevant Period continues through this day instead of ceasing on March 28, 2007, the day the public became aware of the wrongdoings at the Company.

true material adverse facts. The undisclosed, material adverse facts about GPIC included the following:

      a.   Defendants materially misstated the existence of GPIC's internal operational controls and financial procedures, and defendants had propped up the Company's results by manipulating GPIC's accounting procedures;

      b.   Contrary to defendants' representations, GPIC did *not* have adequate systems of internal operational or financial controls, and therefore GPIC's reported financial statements were not true, accurate or reliable.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.

6.     This action is not a collusive one designed to confer jurisdiction on a court of the United States which it would not otherwise have.

7.     Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the Individual Defendants' participation in the wrongful acts detailed herein, occurred in this district, and GPIC maintains its corporate headquarters in this District. Further, Individual Defendants either reside in or maintain executive offices in this district, and/or have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

## THE PARTIES

8.      Plaintiff Glenn D. Hutton ("Plaintiff"), as set forth in the accompanying Verification, is, and was during the Relevant Period, a shareholder of GPIC.  Plaintiff is a citizen of the State of Washington.

9.      Nominal defendant GPIC is a Nevada corporation with its principal place of business located at 1700 Industrial Road, Las Vegas Nevada, 89102. According to the Company's profile, GPIC engages in the manufacture and supply of casino table game equipment to casinos worldwide. It offers gaming chips, table layouts, wheels, playing cards, dice, gaming furniture, and miscellaneous table accessories, including chip trays, drop boxes, and dealing shoes, which are use d in conjunction with casino table games, such as blackjack, poker, baccarat, craps, and roulette. The company also sells its non-casino poker chips to a wholesaler in the United States. The company was founded by Paul S. Endy in 1963. It was formerly known as Paul-Son Gaming Corporation and changed its name to Gaming Partners International Corporation in 2004.

10.     Defendant Gerard P. Charlier ("Charlier") is a citizen of the State of Nevada.  He is, and during the Relevant Period was, a director, Chief Executive Officer, Chief Financial Officer, and President of the Company. During the Relevant Period, defendant Charlier signed the Company's SEC filings.

11.     Defendant Eric P. Endy ("Endy") is a citizen of the State of Nevada.  He is, and during the Relevant Period was, a Director of the Company.

12.     Alain Thieffry ("Thieffry") is a citizen of France.  He is, and during the Relevant Period was, a Director of the Company.

13.     Elisabeth Carrette ("Carrette") is a citizen of France.  She is, and during the Relevant Period was, a Director of the Company.

14.     Robert J. Kelly ("Kelly") is a citizen of the Commonwealth of Massachusetts. He is, and during the Relevant Period was, a Director of the Company.

15.     Charles R. Henry ("Henry") is a citizen of the State of Arizona. He is, and during the Relevant Period was, a Director of the Company.

16.     David W. Grimes ("Grimes") is a citizen of the State of Nevada. He is, and during the Relevant Period was, Chief Financial Officer of the Company.

17.     Defendants Charlier, Endy, Thieffry, Carrette, Kelly, Henry, and Grimes are collectively referred to herein as the "Individual Defendants."

18.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of GPIC common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme deceived the investing public regarding GPIC's business, operations, management and the intrinsic value of GPIC common stock, and allowed defendants to artificially inflate the price of Company shares and caused Plaintiff and other members of the Class to purchase GPIC common stock at artificially-inflated prices.

## DUTIES OF THE INDIVIDUAL DEFENDANTS

19.     By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each

director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

20.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

21.     To discharge their duties, the Individual Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the Individual Defendants were required to, among other things:

      a.  exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

      b.  exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority; and

      c.  when placed on notice of improper or imprudent conduct by the Company and/or its employees, exercise good faith in taking action to correct the misconduct and prevent its recurrence.

22.     Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about its business, operations, products, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

23.     Each of the above officers of GPIC, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or deliberately disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements.

24.     As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act and, during the Relevant Period, was traded on the Nasdaq National Market Exchange (the "Nasdaq"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue.

25.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or deliberately disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with GPIC, each of the Individual Defendants had access to the adverse undisclosed information about GPIC's business prospects and financial condition and performance as particularized herein and knew (or deliberately

disregarded) that these adverse facts rendered the positive representations made by or about GPIC

and its business issued or adopted by the Company materially false and misleading.

26.     The Individual Defendants, because of their positions of control and authority as

officers and/or directors of the Company, were able to and did control the content of the various SEC

filings, press releases and other public statements pertaining to the Company during the Relevant

Period. Each Individual Defendant was provided with copies of the documents alleged herein to be

misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent

their issuance or cause them to be corrected.   Accordingly, each of the Individual Defendants is

responsible for the accuracy of the public reports and releases detailed herein and is therefore

primarily liable for the representations contained therein.

## SUBSTANTIVE ALLEGATIONS

**Defendants' Materially False and Misleading Statements**

27.     On May 15, 2006, Defendants caused the Company to issue the following press

release regarding its financial results for its first quarter ended March 31, 2006:

> The company, a leading manufacturer and supplier of casino table game equipment,
> posted net income of $2.1 million, a 314% increase from approximately $500,000
> recorded in last years first period, on a 49% advance in quarterly revenues. Basic and
> diluted earnings per share totaled $0.26 and $0.25 respectively in the 2006 first
> quarter, a more than four-fold advance from $0.06 per basic and diluted share one
> year earlier.
>
> For the three months ended March 31, 2006, revenues jumped 49% to $18.3 million
> from $12.3 million last year. Gross profit rose 60% in the most recent period to $7.7
> million from $4.8 million in the first quarter of 2005, propelled by higher revenue
> and improved cost of revenue detailed below. Gross profit margin increased to 42.3%
> from 39.3% a year ago.
>
> First Quarter operating income increased 214% to $3.4 million from $1.1 million in
> the corresponding 2005 period as a result of production efficiencies realized by
> higher volume.

28.     Defendant Gerard Charlier, President and CEO, commented:

- 7 -

"We are very pleased by the company's continued progress and substantial improvement to the bottom line. The first quarter was a strong period of business for GPIC. Our robust sales increase was driven by strength across the company's geographic markets including the U.S., Europe and Asia. Both of our principal operating subsidiaries, GPI-USA and GPI-SAS, recorded higher revenues for the quarter. We are particularly pleased by the increase in sales orders, to be delivered after the first quarter, for RFID chips in low and high frequency from very large and prestigious casinos, particularly in Macau and also in the U.S. We started developing RFID chips some 10 years ago. Thanks to the past years of experience, we are able to imbed microchips in all of our gaming chip products with such efficiency that it is virtually impossible for dealers and players to notice any difference in the feel or handling of these chips. Unit prices of chips and readers are now low enough to make it attractive for casinos to invest in these products and improve the security and efficiency of their table game management systems."

CEO Charlier also stated that the company continues to experience strong market acceptance and sales growth for both its high-and low-frequency RFID gaming chips. The increase in GPIC revenues and net income have been fueled in large part due to the growth rate of new and existing casinos and markets, particularly in Asia and with respect to RFID embedded gaming chips. There is no assurance that growth of the gaming markets in Asia or our RFID products will continue at comparable rates.

Backlog of production orders, expected to be fulfilled in 2005 amounted to approximately $17.7 million for our French operations and $4.2 million for the U.S. as of March 31, 2006. At March 31, 2005, our backlog was approximately $8.9 million for our French operations and $8.6 million for the U.S.

First quarter revenues benefited from higher sales by GPI-SAS, the company's French subsidiary, primarily due to sales to casino projects in Macau. GPI-USA also enjoyed increased revenues due to new casino openings and large reorders in the U.S.A. Cost of revenues as a percentage of total revenues decreased to 57.7% from 60.7% in last year's first quarter. The improvement was primarily driven by a better absorption of fixed costs due to the higher sales volume and the product mix at GPI-SAS and GPI-USA

Total operating expenses, while $590,000 higher for the quarter, showed significant improvement as a percentage of quarterly revenues, declining to 23.7% from 30.5% in the prior year quarter. The increase in operating expenses reflected $220,000 related to future compliance with Sarbanes-Oxley Act of 2002, and $370,000 related to increased audit and tax fees, salary, bonus and vacation increases for 2006, as well as building expansions in both France and Mexico.

At March 31, 2006, GPIC had approximately $7.6 million in cash and cash equivalents and $6.1 million in marketable securities for a total of $13.7 million, compared with $13.7 million at December 31, 2005. Working capital totaled approximately $12.5 million at the end of the first quarter of 2006, an increase of

- 8 -

approximately 30% from $9.6 million at December 31, 2005. Cash was used to purchase inventory in order to meet the production needs and our accounts receivable also increased since the year ended December 31, 2005

29. Defendant Charlier also stated that:

The Company's improved profitability, backlog, growing revenues, and strengthened financial position are very satisfying. The year is off to a solid start, and we intend to continue building on our progress and implementing our strategies for profitable growth. As always, our entire team remains focused on providing quality products and superior service to our customers in the gaming industry worldwide."

30. On May 15, 2006, Defendants filed the Company's Form 10-Q with the SEC for the quarterly period ended March 31, 2006, signed by defendant Charlier.

31. Defendants' statements and filings of May 15, 2007, were false and misleading because, *inter alia*:

    a.  The Company's purported success was *not* the result of defendants' competent management. In fact, defendants had materially misstated the existence of GPIC's internal operational controls and financial procedures, and defendants had improperly issued false and unreliable financial results;

    b.  Throughout the Relevant Period, GPIC did not have adequate systems of internal operational or financial controls, and GPIC's reported financial statements were *not* true, accurate or reliable;

    c.  As a result of the foregoing, throughout the Relevant Period, the Company's financial statements and reports were *not* prepared in accordance with GAAP and SEC rules; and

    d.  As a result of the aforementioned adverse conditions which defendants failed to disclose, defendants lacked any reasonable basis to claim that GPIC was operating according to plan, and achieving the "record" results as stated by defendants.

- 9 -

32.     The statements made by defendants and contained in the Company's press releases
and SEC filings made during the remainder of and throughout the Relevant Period were materially
false and misleading and were known by defendants to be false at that time, or were recklessly
disregarded as such thereby, for the reasons stated herein.

33.     On August 14, 2006, the Company issued the following statement regarding its
financial results for its second quarter ending June 30, 2006 and first six months of 2006:

> Net Income for the second quarter increased by 36% to $2.0 million from $1.5
> million a year ago. Basic and diluted earnings per share for the quarter totaled $0.25,
> up from $0.18 per diluted share ($0.19 basic) in the same quarter of 2005. Second
> quarter revenues grew 28% to $19.4 million from $ 15.2 million one year earlier.
>
> For the first half of 2006, net income totaled $4.1 million, an increase of 106% from
> $2.0 million last year. Earnings per diluted share for the first six months of 2006
> were $0.51 ($0.52 basic), 113% higher than the $0.24 ($0.25 basic) recorded in the
> same period of 2005. Six months ended June 30, 2006 revenues rose 37% to $37.7
> million from $27.5 million in the previous year.

34.     Defendant Charlier, commented:

> We are extremely pleased with the company's ongoing rapid progress as demand
> from the casino gaming industry for our RFID-based products continues to escalate.
> In particular, the continuing strong growth of casinos in Macau is a key factor
> supporting our progress.
>
> As the company ramps up its production efforts for the increasing demand for our
> higher frequency 13.56 MHz RFID gaming chips, demand remains strong for our
> other brands and product lines, including our lower frequency 125 KHz RFID
> imbedded gaming chips and readers. Based on backlog and order pace, we estimate
> that GPIC sales of RFID gaming chips, jetons and plaques this year will be in excess
> of approximately $16 million, a more than three-fold increase from RFID chip sales
> in 2005 with more than $9.0 million in low frequency and $7.0 million in high
> frequency." Revenue increases for both the second quarter and first half were driven
> by sales growth in GPI-SAS, the company's French-based subsidiary, fueled by new
> casino openings in Macau.

35.     The announcement continued:

> Cost of revenues increased in both the second quarter and six months in 2006, due
> primarily to the initial start-up costs at GPI-SAS relating to manufacturing higher
> frequency RFID gaming chips. Gross profit increased by $810,000 in absolute

dollars in the second quarter of 2006 and by $3.7 million in the first half of 2006 compared to the same periods in 2005, but declined as a percentage of revenues from 45.5% to 39.8% in the second quarter and from 42.8% to 41.0% in the second half of 2006 compared to 2005.

Operating expenses, which include product development; marketing and sales; depreciation and amortization, and general and administrative costs, showed an increase of $669,000 in the second quarter of 2006, while declining as a percentage of revenues from 27.0% a year ago to 24.5% in the second quarter of 2006. As a percentage of revenues, total operating expenses for the first six months of 2006 decreased to 24.1% from 28.6% in 2006.

At June 30, 2006, cash and marketable securities amounted to $15.1 million, compared with $13.6 million in the prior year. The company continues to build inventory to support production. Working capital was $14.6 million in the current year, compared with $9.6 million in 2005.

Also at June 30, 2006, the backlog of production orders approximated $44.3 million for GPI-USA and $16.9 million for GPI-SAS. One year earlier, the comparable backlog was $4.7 million for GPI-USA and $ 12.5 million for GPI-SAS.

36.    On August 14, 2006, Defendants filed the Company's Form 10-Q with the SEC for the period ended June 30, 2006, signed by defendant Charlier. The filing and statements of August 14, 2006 were false and misleading for the reasons stated above.

37.    On November 13, 2006, the Company issued the following statement regarding its financial results for its third quarter ended September 30, 2006 and first nine months of 2006:

For the third quarter of 2006, the Company reported revenues of $20.1 million, an increase of 50% over revenues of $13.4 million for the third quarter of 2005. Gross profit for the quarter was $6.1 million, or 30% of revenues, compared to $4.9 million or 36.3% of revenues in the same period of year ago. The decline in gross profit margin was primarily related to difficulty in initial manufacturing of gaming chaps using Magellan/PGIC RFID high-frequency technology in a very large volume. The Company is working to improve yields and expects to see such improvement as it gains experience and identifies ways in which to maximize efficiency in this area of manufacturing.

New income for the third quarter increased 314%, to $1.0 million, or $0.13 per basic and $0.12 per diluted share, from $246,000 or $0.03 per basic and diluted share in the three months ended September 30, 2005. Weighted average shares outstanding were 8.0 million basic and 8.2 million diluted for third quarter of 2006, and 7.8 million basic and 8.2 million diluted for the three months ended September 30, 2005.

For the nine month period ended September 30, 2006, revenues were $57.9, an increase of 41.6% compared to revenues of 40.9 million in the first nine months of 2005. Gross profit for the period was $21.4 million, or 36.9% of revenues, compared to $16.5 million or 40.3% of revenues in the comparable period in 2005. Decline in gross profit margin for the period was due to initial start up costs, as well as the above mentioned difficulty in the manufacture of high frequency RFID gaming chips.

Net income for the period was $5.0 million, or $0.63 per basic and $0.62 per diluted share, an increase of 125% over net income of $2.2 million or $0.29 per basic and $0.27 per diluted share for the nine months ended September 30, 2005. Weighted average shares outstanding were 7.9 million basic and 8.1 million diluted for first nine months of 2006, and 7.8 million basic and 8.1 million diluted for the comparable period in 2005.

As of September 30, 2006, the Company had cash and marketable securities of $10.8 million, compared to $13.6 million on December 31, 2005.

The Company also announced a one-time cash dividend of $0.125 per share, payable on December 15, 2006 to shareholders of record a t the close of business on November 27, 2006. This marks the second cash dividend paid to the shareholders of Gaming Partners and reflects the continued improvement in the Company's profitability and operational performance.

Backlog of production orders, which are expected to be filled in 2006, at the end of the third quarter was approximately $4.2 million at GPI-USA and $7.4 million at GPI-SAS. This compares to backlog of $3.9 million and $8.0 million for GPI-USA and GPI-SAS respectively on September 30, 2005.

38.    Defendant Charlier made the following statement regarding the results:

In the third quarter we saw a continuation of strong year-over-year revenue growth, fueled by the strength of our GPI-SAS subsidiary, which saw revenue double compared to the third quarter last year. Our U.S. business remained strong as well, achieving sales growth of approximately 4% over last year through re-racking orders from our casino partners throughout the United States.

39.    Defendant Charlier added:

Looking ahead, we remain encouraged by the opportunities in the RFID space, as demand for our next generation casino currency solutions is continuing to build. As mentioned last quarter, we expect full-year sales of four RFID gaming chips to be approximately $16 million, more than three-fold growth over 2005. RFID technology is still in its infancy particularly in the U.S., and expected to be a significant growth driver for GPI going forward. Additionally, broader trends in the gaming market bode well for our full range of casino currency products as we believe the market will be driven by new casino openings in the U.S. and abroad, customer re-orders

necessitated by re-branding or technological obsolescence and overall growth in the popularity of table gaming.

As the recognized leader in the global market for casino currency and table gaming supplies, we are excited about what the future holds for the industry, and more importantly, for GPI and our shareholders.

40.     On November 13, 2006, Defendants filed the Company's Form 10-Q with the SEC for the period ended September 30, 2006, signed by defendant Charlier. The filings and statements of September 30, 2006 were false and misleading for the reasons stated above.

**The True Financial And Operational Condition Of GPIC Is Belatedly Disclosed**

41.     On March 28, 2007, defendants announced that the Company was delaying the filing of its full-year 2006 report due to deficiencies in accounting control procedures. GPIC said the deficiencies were discovered while its year-end financial statements were being prepared. The Company said that it expects to identify certain deficiencies as material weaknesses when the report is filed and that it is working to resolve and remedy them.

**Violations of GAAP and SEC Reporting Rules**

42.     During the Relevant Period, defendants publicly issued false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information regarding the Company's internal control deficiencies and the fact that defendants were not in a position to adequately access the Company's financial condition and prospects one way or the other. As such, defendants misrepresented the truth about the Company, its financial performance, accounting, reporting, and financial condition in violation of the federal securities laws and GAAP.

43.     GAAP consists of those principles recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practice at the particular

time. Regulation S-X, to which the Company is subject as a registrant under the Exchange Act, 17 C.F.R. § 210.4-01(a)(1), provides that financial statements filed with the SEC which are not prepared in compliance with GAAP, are presumed to be misleading and inaccurate. SEC Rule 13a-13 requires issuers to file quarterly reports.

44.     SEC Rule 12b-20 requires that periodic reports contain such further information as is necessary to make the required statements, in light of the circumstances under which they are made, not misleading.

45.     The Company's financial statements contained in the fiscal 2006 statements, announcements and documents filed with the SEC for the quarterly periods throughout the Class Period were presented in a manner that violated the principle of fair financial reporting and the following GAAP, among others:

    a.  The principle that financial reporting should provide information that is useful to present and potential investors and creditors and other users in making rational investment, credit and similar decisions (FASB Statement of Concepts No. 1);

    b.  The principle that financial reporting should provide information about an enterprise's financial performance during a period (FASB Statement of Concepts No. 1);

    c.  The principle that financial reporting should be reliable in that it represents what it purports to represent (FASB Statement of Concepts No. 2);

    d.  The principle of completeness, which means that nothing material is left out of the information that may be necessary to ensure that it validly represents underlying events and conditions (FASB Statement of Concepts No. 2);

e.   The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered (FASB Statement of Concepts No. 2);

f.   The principle that contingencies and other uncertainties that affect the fairness of presentation of financial data at an interim date shall be disclosed in interim reports in the same manner required for annual reports (APB Opinion No. 28);

g.   The principle that disclosures of contingencies shall be repeated in interim and annual reports until the contingencies and have been removed, resolved, or have become immaterial (APB Opinion No. 28); and

h.   The principle that management should provide commentary relating to the effects of significant events upon the interim financial results (APB Opinion No. 28).

46.   In addition, during the Relevant Period, defendants violated SEC disclosure rules, as follows:

a.   Defendants failed to disclose the existence of known trends, events or uncertainties that they reasonably expected would have a material, unfavorable impact on net revenues or income or that were reasonably likely to result in the Company's liquidity decreasing in a material way, in violation of Item 303 of Regulation S-K under the federal securities laws (17 C.F.R. § 229.303), and that failure to disclose the information rendered the statements that were made during the Class Period materially false and misleading; and

b.   By failing to file financial statements with the SEC that conformed to the requirements of GAAP, such financial statements were presumptively misleading and inaccurate pursuant to Regulation S-X, 17 C.F.R. § 210.4-01(a)(1).

47.     Defendants were required to disclose, in the Company's financial statements, the existence of the material facts described herein and to appropriately recognize and report assets, revenues, and expenses in conformity with GAAP. The Company failed to make such disclosures and to account for and to report its financial statements in conformity with GAAP. Defendants knew, or were reckless in not knowing, the facts which indicated that the fiscal 2006 interim financial statements, press releases, public statements, and filings with the SEC, were materially false and misleading for the reasons set forth herein.

## DEMAND WOULD BE FUTILE

48.     Plaintiff brings this action derivatively in the right and for the benefit of GPIC to redress injuries suffered and to be suffered by GPIC as a result of the breaches of fiduciary duty by the Individual Defendants.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

49.     Plaintiff is an owner of GPIC common stock and was an owner of GPIC common stock during the time period in which the Individual Defendants' wrongful course of conduct alleged herein was occurring through the present.

50.     Plaintiff will adequately and fairly represent the interests of GPIC and its shareholders in enforcing and prosecuting its rights.

51.     Plaintiff did not make a demand on the GPIC Board to bring the claims alleged herein because such a demand would have been futile.  At the time Plaintiff filed this derivative action, the GPIC Board consisted of the following members: Defendants Charlier, Carrette, Endy, Thieffry, Kelly, and Henry and non-party Martin A. Berkowitz, who has been a member of the Board of Directors since August 8, 2007.  As detailed below, each of the directors face a sufficiently substantial likelihood of liability on the derivative claims alleged herein and is therefore in no

position to render a disinterested judgment as to whether the Company should bring such claims, and/or lacks sufficient independence with which to render a disinterested decision on whether to pursue the derivative claims against the Individual Defendants.

52.     The Audit Committee is responsible, by its Charter, for overseeing the accounting and financial reporting processes of the Company and the audit of the financial statements of the Company.  The Committee is also responsible for reviewing the financial information to be provided to the stockholders, reviewing the systems of internal controls, and overseeing the Company's accounting and financial reporting processes.

53.     The GPIC Audit Committee Charter provides that the Audit Committee shall, *inter alia*:

    a.  Review the significant accounting principles, policies and practices followed by the Company in accounting for and reporting its financial results of operations in accordance with GAAP.

    b.  Review any management letters or internal control reports prepared by the independent accountants or the Company's internal auditors and responses to prior management letters, and review with the independent accountants the Company's internal financial controls.

    c.  Review with management the financial results, the proposed earnings press release and formal guidance, if any, which the Company may plan to offer, and review with the independent accountants the results of their review of the interim financial information and audit of the annual financial statements.

    d.  Review management's analysis of any significant accounting issues, changes, estimates, judgments or unusual items relating to the financial statements and the

selection, application and effects of critical accounting policies applied by the Company and review with the independent accountants the reports on such subjects delivered pursuant to Section 10A(k) of the Exchange Act and the rules and regulations promulgated thereunder by the SEC.

54.     The Audit Committee is responsible for assisting the Board in its oversight responsibilities relating to the integrity of the Company's systems of internal accounting and financial controls. The Audit Committee Charter imposed a detailed set of responsibilities and powers in connection with financial reporting and financial controls. Thus, the Audit Committee was responsible for overseeing and directly participating in GPIC's financial reporting process. Director Defendants Kelly and Henry were members of the Audit Committee during the Relevant Period. Defendant Kelly is the Chairman of the Audit Committee. No member was qualified to be designated as an Audit Committee "financial expert." As a result, these Defendants face a sufficiently substantial likelihood of liability for their breach of fiduciary duties. Therefore, demand is futile as to Defendants Kelly and Henry.

55.     Each of the Director Defendants faces a sufficiently substantial likelihood of liability in this action because of his failure, as a director, to ensure that reliable systems of financial controls and information and reporting were in place and functioning effectively. The dramatic breakdowns and gaps in those controls were so widespread and systemic that each of the Director Defendants faces substantial exposure to liability for his total abrogation of his duty of oversight. These directors either knew or should have known, in the absence of complete recklessness, that violations of law were occurring and took no steps in good faith to prevent or remedy that situation, proximately causing millions of dollars of losses to the Company.

56.     Each of the Director Defendants participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings during the relevant time period.  As such, Director Defendants face a sufficiently substantial likelihood of liability for the same.

57.     The GPIC Board of Directors and senior management participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the GPIC stockholders or recklessly, consciously and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties.  As a result of their access to and review of internal corporate documents, conversations and connections with other corporate officers, employees and directors, and attendance at management and/or Board meetings, each of the Defendants knew the adverse non-public information regarding the issuance of false and/or misleading press releases and/or SEC filings.  Pursuant to their specific duties as Board members, Defendants are charged with the management of the Company and to conduct its business affairs.  Defendants breached the fiduciary duties that they owed to GPIC in that they failed to prevent the issuance of false and/or misleading press releases and/or SEC filings.  Certain directors are also dominated and controlled by other Defendants and cannot act independently of them.  Thus, the GPIC Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because each of its members participated personally in the wrongdoing or are dependent upon other Defendants who did.

**The Members of the Board of Directors Lack Independence**

58.     Director Defendant Charlier serves as GPIC's Chairman of the Board of Directors, Chief Executive Officer and President.  Charlier is considered an inside director because of his employment as Chief Executive Officer and President of the Company and is therefore not

considered an independent director.  Due to Defendant Charlier's employment relationship with the Company, demand upon Defendant Charlier is futile.

59.     Director Defendant Endy served as GPIC's Executive Vice President from September 2002 to march 2003, and is currently a consultant to the Company.  He served as GPIC's Secretary from May 1984 to March 2003, Chairman of the Board and Chief Executive Officer from November 1998 to September 2002, President from January 1994 to September 2002, and Treasurer from July 2001 to September 2002.  Due to Defendant Endy's employment relationship with the Company, demand upon Defendant Endy is futile.

60.     Director Defendant Carrette is the President of the Supervisory Board of Holding Wilson, S.A. ("Holding Wilson"), which is the principal stockholder of GPIC.  Director Defendant Thieffry has served as the President of the Executive Board of Holding Wilson since February 2002 and as an executive of Holding Wilson since 1984.  Director Defendant Kelly has worked with LFR, Inc., an affiliate of Holding Wilson from 1994 to 2000.  Because of these intertwining relationships, demand upon Director Defendants Carrette, Thieffry and Kelly is futile.

61.     Holding Wilson is the beneficial owner of 49.3% of the outstanding shares of the Company.  The Estate of Francois Carrette is the principal stockholder of Holding Wilson.  As such, Director Defendant Carrette is the beneficial owner of 49.3% of GPIC's outstanding shares.  According to the Company's Form 10-K filed on May 15, 2007, Director Defendant Thieffry is not independent due to his affiliation with Director Defendant Carrette.

62.     Director Defendant Carrette and Director Defendant Endy have a voting agreement and irrevocable proxies between them in connection with the election of directors.  As such, according to the Company's Form 10-K, they are acting as a group within the meaning of

Section 13(d)(3) of the Securities Act of 1933, as amended. As a group, Carrette and Endy beneficially own more than 50% of the voting power of the Company's shareholders.

63.     In addition, should the Director Defendants decide to bring claims against themselves, it would likely trigger an "insured vs. insured" exclusion which is typical for D&O insurance policies, which would make D&O insurance coverage unavailable to them. Therefore, demand is futile as to all Director Defendants.

64.     In addition, demand would be futile and useless for the additional following reasons:

    a.  The Director Defendants, because of their inter-related business, professional and personal relationships, have developed debilitating conflicts of interest that prevent the Board members of the Company from taking the necessary and proper action on behalf of the Company as requested herein;

    b.  The Director Defendants of GPIC, as more fully detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the GPIC stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties. Each of the Director Defendants exhibited a sustained and systemic failure to fulfill their fiduciary duties, which could not have been an exercise of good faith business judgment and amounted to gross negligence and extreme recklessness;

    c.  In order to bring this suit, a majority of the directors of GPIC would be forced to sue themselves and persons with whom they have extensive

business and personal entanglements, which they will not do, thereby excusing demand;

d.  The acts complained of constitute violations of the fiduciary duties owed by the GPIC officers and directors and these acts are incapable of ratification;

e.  GPIC has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual and Director Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for GPIC any part of the damages GPIC suffered and will continue to suffer;

f.  The actions of the directors have impaired the Board's ability to validly exercise its business judgment and rendered it incapable of reaching an independent decision as to whether to accept Plaintiff's demands; and

g.  Any suit by the directors of GPIC to remedy these wrongs would likely expose the Director Defendants and GPIC to further violations of securities laws which could result in additional civil actions being filed against one or more of the Director Defendants thus, they are hopelessly conflicted in making any supposedly independent determination as to whether to sue themselves.

65.  Plaintiff has not made any demand on the shareholders of GPIC to institute the respective action since demand would be a futile and useless act for the following reasons:

a.  GPIC is a publicly held company with approximately 8.10 million shares outstanding, and thousands of shareholders;

    b. Making demand on such a number of shareholders would be impossible for Plaintiff, who has no way of finding out the names, addresses or phone numbers of all the shareholders; and

    c. Making demand on all shareholders would force Plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

66.    GPIC has expended and will continue to expend significant sums of money as a result of the illegal and improper actions described above.  Such expenditures will include, but are not limited to:

    a. Costs incurred to carry out internal investigations, including legal fees paid to outside counsel and experts.

## FIRST CAUSE OF ACTION

### Against the Individual Defendants
### for Breach of Fiduciary Duty

67.    Plaintiff incorporates by reference and reallege each and every allegation set forth above as if set forth fully herein.

68.    The Individual Defendants owed and owe GPIC fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe GPIC the highest obligation of good faith, fair dealing, loyalty and due care.

69.    The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

70.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the business prospects of the Company and failed to correct the Company's public announcements.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

- 23 -

71.     As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, GPIC has sustained significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

72.     Plaintiff, on behalf of GPIC, has no adequate remedy at law.

**SECOND CAUSE OF ACTION**

**Against The Individual Defendants**
**<u>for Abuse of Control</u>**

73.     Plaintiff incorporates by reference and reallege each and every allegation set forth above as if set forth fully herein.

74.     The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence GPIC, for which they are legally responsible.

75.     As a direct and proximate result of the Individual Defendants' abuse of control, GPIC has sustained significant damages.

76.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

77.     Plaintiff, on behalf of GPIC, has no adequate remedy at law.

**THIRD CAUSE OF ACTION**

**Against The Individual Defendants**
**<u>for Gross Mismanagement</u>**

78.     Plaintiff incorporates by reference and reallege each and every allegation set forth above as if set forth fully herein.

79.     By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard

to prudently managing the assets and business of GPIC in a manner consistent with the operations of a publicly held corporation.

80.     As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, GPIC has sustained significant damages in excess of millions of dollars.

81.     As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

82.     Plaintiff, on behalf of GPIC, has no adequate remedy at law.

**FOURTH CAUSE OF ACTION**

**Against The Individual Defendants
for Waste of Corporate Assets**

83.     Plaintiff incorporates by reference and reallege each and every allegation set forth above as if set forth fully herein.

84.     As a result of the Individual Defendants' improper conduct and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, Individual Defendants have caused GPIC to waste valuable corporate assets by paying bonuses to certain of its executive officers and incur potentially millions of dollars of legal liability and/or legal costs to defend the Individual Defendants' unlawful actions.

85.     As a result of the waste of corporate assets, Individual Defendants are liable to the Company.

86.     Plaintiff, on behalf of GPIC, has no adequate remedy at law.

## FIFTH CAUSE OF ACTION

### Against The Individual Defendants
### for Unjust Enrichment

87.     Plaintiff incorporates by reference and reallege each and every allegation set forth above as if set forth fully herein.

88.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of GPIC.

89.     Plaintiff, as shareholder and representative of GPIC, seeks restitution from the Individual Defendants, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by the Individual Defendants, from their wrongful conduct and fiduciary breaches.

## SIXTH CAUSE OF ACTION

### Against The Individual Defendants
### for Contribution And Indemnification

90.     Plaintiff incorporates by reference and reallege each and every allegation set forth above as if set forth fully herein.

91.     GPIC is alleged to be liable to various persons, entities and/or classes by virtue of the same facts or circumstances as are alleged herein to give rise to Individual Defendants' liability to GPIC.

92.     GPIC's alleged liability on account of the wrongful acts and practices and related misconduct described above arises, in whole or in part, from the knowing, reckless, disloyal and/or bad faith acts or omissions of the Individual Defendants as alleged above, and GPIC is entitled to contribution and indemnification from each of the Individual Defendants in connection with all such

claims that have been, are or may in the future be asserted against GPIC by virtue of the Individual Defendants' misconduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.      Against the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment;

B.      Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of the Individual Defendants' trading activities or their other assets so as to ensure that Plaintiff has an effective remedy;

C.      Awarding to GPIC restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by these Defendants;

D.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  August 31, 2007                    THE O'MARA LAW FIRM, P.C.
                                           WILLIAM M. O'MARA, ESQ.
                                           BRIAN O. O'MARA, ESQ.
                                           DAVID C. O'MARA, ESQ.



                                           _____
                                                  BRIAN O. O'MARA

311 East Liberty Street
Reno, Nevada 89501
Telephone:  775/323-1321
775/323-4082 (fax)

WILLIAM B. FEDERMAN
FEDERMAN & SHERWOOD
10205 N. Pennsylvania
Oklahoma City, Oklahoma 73120
Telephone:  405/235-1560
405/239-2112 (fax)

            -and-

2926 Maple Ave., Ste. 200
Dallas, Texas 75201

LAW OFFICES OF MARC S. HENZEL
MARC C. HENZEL
273 Montgomery Avenue, Suite 202
Bala Cynwyd, Pennsylvania 19004
Telephone:  610/660-8000
610/660-8080 (fax)

Attorneys for Plaintiff

## VERIFICATION

I, Glenn Hutton, declare that I have reviewed the Complaint ("Complaint") prepared on behalf of **Gaming Partners International Corp. (Nasdaq: GPIC)** and I authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder, and have been a holder, of common stock during the time period in which the wrongful conduct alleged and complained of in the Complaint was occurring.

_8-31-2007_
Date

_[signature]_
Signature